[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 161
The plaintiff, The Dime Savings Bank of New York, FSB, has brought a foreclosure action against the defendants, Peter Z. Wu and Judy M. Wu, as makers of a promissory note and mortgagors of realty located in Stamford.
The complaint alleges that Mr. and Mrs. Wu executed a note dated October 21, 1986, in the original principal amount of $320,000, payable to The Dime Real Estate Services-Connecticut, Inc. As security for this note, the defendants granted a first mortgage on their property at 88 Winding Hill Road in Stamford. The note went into default, according to the complaint, starting with the payment due September 1, 1988. The complaint also states The Dime Real Estate Services-Connecticut, Inc. assigned this mortgage to the plaintiff several days after the defendants executed the note and mortgage.
The defendants admitted execution of the note and mortgage, but denied that the note was in default. They also filed three special defenses. The first is that the defendants signed a variable rate mortgage, which provided that interest was to be adjusted according to an index described as "the monthly median cost of funds ratio (annualized) (percent) as made available by the Federal Home Loan Bank Board"; that the plaintiff failed to properly disclose the nature of the index; and that this index was not readily available for review. The second special defense claims that the plaintiff bank erroneously calculated the amount of interest that was due and owing. The third alleges waiver on the part of the plaintiff for having entered into an agreement with the defendants changing the provisions of the note and mortgage.
The defendants also filed a counterclaim with four counts. The first count is similar to the first special defense and alleges that the index on which changes in interest were based was not reasonably available to the defendants or to the general public, and that defendants have not been able to determine the accuracy of the interest calculations. The second count is similar to the second special defense in that it alleges that the calculations of interest were incorrect. The third count refers to a restructuring or forbearance agreement of May 10, 1990, which modified the original note and mortgage. The defendants contend that they were coerced into signing this agreement; that CT Page 162 the plaintiffs knew that the defendants would be unable to meet its "onerous requirements"; and that the plaintiff therefore breached its implied duty of "good faith and fair dealing." The fourth count alleges that the plaintiff's conduct violated General Statutes 42-110a et seq., the Connecticut Unfair Trade Practices Act. (CUTPA). The defendants claim money damages, interest, attorney's fees, punitive and exemplary damages as authorized by CUTPA.
The plaintiff has now moved for summary judgment on its complaint, and also with respect to the defendants' counterclaim. In support of its motion, the plaintiff submitted an affidavit by Phyllis Edwards, an officer of the plaintiff. This affidavit includes a copy of the promissory note and of the adjustable rate rider. Paragraph 4(B) of the note states that "Changes in the rate of interest will be based on an Index Rate. The `Index' is [t]he monthly median cost of funds ratio (annualized) (percent) as published by The Federal Home Loan Bank Board." The "Rider" to the adjusted rate note, also signed by the defendants, changed the words "as published by" to "as made available by." The Edwards affidavit explains that interest is calculated at basically 3.25% above the index, with a cap of 14.9%. The affidavit includes copies of the plaintiff's commitment letter and the "Truth in Lending Disclosure Statement" of October 6, 1986, both of which refer to calculation of interest on the basis of the above described index.
The affidavit by Edwards also contains a copy of an agreement dated May 10, 1990, which the defendants signed in the presence of a notary public "as their free act and deed." In this agreement the defendants acknowledged their "liability on the note and mortgage"; that the allegations in the plaintiff's complaint "are true"; and they further admitted that they "have no defenses or counterclaims." The plaintiff agreed to stay prosecution of its pending foreclosure action if the defendants made a lump sum payment of $28,947.50 toward an arrearage of approximately $72,000, and paid the balance of the arrearage by twelve monthly payments of approximately $3,600, which the defendants ultimately failed to do.
Plaintiff also submitted an affidavit by Denise A. Settineri, a vice president of the plaintiff, to the effect that the Wu note was due and unpaid as of May 31, 1992, and that as of that date the principal due was $315,792.91, plus interest and other charges for a total debt of $436,809.81, with a per diem of CT Page 163 $89.91.
The defendants submitted an affidavit by defendant Peter Z. Wu in opposition to plaintiff's motion for summary judgment. Mr. Wu's affidavit contends that: (i) he was never able to locate the index on which changes in interest rates were allegedly based, although the plaintiff had told him that the index was published and generally available; and that he had looked in newspapers and financial papers for the index, all to no avail; (ii) the true owner of the note and mortgage was not the plaintiff, but rather Kidder-Peabody; (in) he was coerced into signing the restructuring agreement in which he made a lump-sum payment of $28,947.50, and that this amount was not credited to his account by the plaintiff; and that the plaintiff knew he could not make the monthly payments of $3,600 on the arrearage, in addition to the regular payments on the mortgage; and (iv) the plaintiff "may have discriminated" against him in connection with the restructuring agreement due to Mr. Wu's Chinese ancestry.
The criteria for the granting of a summary judgment were summarized by the Appellate Court in Cummings Lockwood v. Gray,26 Conn. App. 293, 296-297, 600 A.2d 1040 (1991): (i) such a judgment may be granted if there is no genuine issue as to any material fact; (ii) a material fact is one that will make a difference in the outcome of the case; (iii) the moving party has the burden of proving the nonexistence of any material fact; (iv) the evidence must be viewed in the light most favorable to the nonmovant; and (v) the test is whether the moving party would be entitled to a directed verdict on the same facts.
Another recent case, Wadia Enterprises. Inc. v. Hirschfeld,27 Conn. App. 162, 166, 168-70, 604 A.2d 1339 (1992), sets forth the obligations of the nonmovant: (i) the party opposing summary judgment must substantiate its claim to the contrary by showing that there is a genuine issue of material fact, and must disclose the evidence establishing the existence of such an issue; (ii) "[m]ere statements of legal conclusions and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment"; (iii) "[i]t is not enough that one opposing a motion for a summary judgment claims that there is a genuine issue of material fact; some evidence showing the existence of such an issue must be presented in the counter affidavit"; (iv) "[i]t is not enough . . . merely to assert the existence of such a disputed issue . . . [instead] the genuine issue aspect requires the party to bring forward CT Page 164 before trial evidentiary facts, or substantial evidence outside of the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred;" and (v) "[m]ere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue."
Thus, our task in deciding this motion is not to evaluate the merits of a particular issue, but only to decide whether there exists any genuine issue of material fact. In this regard it should be noted that "[t]he mere presence of an alleged adverse claim is not sufficient to defeat a motion for summary judgment." Farrell v. Farrell, 182 Conn. 34, 39, 438 A.2d 415
(1980). Instead, the opposing party must "recite specific facts . . . which contradict those stated in the [movant's] affidavits and documents." Id., 39-40. Two other facets of summary judgment should be noted: First, this court "is limited to considering the pleadings, affidavits, and other documentary proof submitted by the parties", and second, "[i]nterpretation of the pleadings is a question of law." Mac's Car City Inc. v. DeNigris, 18 Conn. App. 525, 529, 559 A.2d 712 (1989).
Summary judgment in favor of the plaintiff is warranted in this case, I believe, because the defendants did not refute the facts contained in the affidavits submitted by plaintiff. The first issue concerns the index used for calculating changes in interest. As pointed out previously, the Edwards affidavit and attachments, including the promissory note, variable rate rider, commitment letter and the Truth in Lending statement, all indicate that the index used by the plaintiff to calculate interest is the monthly median cost of funds ratio (annualized) (percent) as made available by the Federal Home Loan Bank Board. And there is no evidence to support the claim that the plaintiff negligently, improperly or incorrectly calculated defendants' monthly interest payments. Nor does Mr. Wu's affidavit claim that this index was not the one used by the plaintiff to calculate interest. Instead, he simply asserts that he was unable to personally locate this index in newspapers or financial papers, and his affidavit lacks sufficient facts to indicate that the index is not available to the public.
Moreover, the plaintiff's variable rate note complies with the provisions of General Statutes 49-31b(b), in that it contained: "(1) a statement that the interest rate is subject to variation, (2) the conditions under which such rate may vary, (3) the manner, including changes in payment amounts, number of CT Page 165 scheduled periodic payments, or change in the amount due at maturity, in which any increase and decrease in the rate may be effected, and (4) the date, if applicable, by which according to the terms of the note, remaining amounts of principal and interest, if any, shall be due and payable in full, regardless of changes in the interest rate."
As to the identity of the holder of the note and mortgage, the plaintiff indicates that it currently services the mortgage in question, and that Kidder-Peabody had invested in this mortgage. From the standpoint of marketable title, perhaps Kidder should be joined as a plaintiff in this action, but Kidder's relationship with the mortgage does not raise a genuine issue of material fact concerning execution of the note by the defendants, and that the note is in default.
With respect to the restructuring agreement of May 10, 1990, a genuine issue of material fact sufficient to defeat summary judgment is lacking. The agreement itself contains no "coercive" language, and, of course, the notary public acknowledged the defendants' signatures "as their free act and deed." The defendants' allegations that they were "coerced" by the plaintiffs into signing the agreement represent examples of "[m]ere statements of legal conclusions . . . and bald assertions, [which] without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment." Wadia Enterprises. Inc., supra, 170.
The defendant's contention that the plaintiff failed to credit their account for the lump sum payment required by the restructuring agreement is simply speculation on their part. They have not exhibited any evidence in support of this suspicion. As stated in Wadia Enterprises. Inc., supra, 168, "some evidence of a [genuine issue of material fact] must be presented in the counter affidavit."
The claim of discrimination due to Mr. Wu's Chinese ancestry was not pleaded in the special defenses nor in the counterclaim, but rather surfaced for the first time in his affidavit. Mr. Wu concedes that this is based on "suspicion" only and not on any facts.
There are no outstanding issues of material fact regarding CUTPA, a violation of which requires conduct that is immoral, unethical, oppressive or unscrupulous. Even assuming that CUTPA CT Page 166 applies to banks, Mr. Wu's affidavit does not refer to CUTPA or in what precise manner this statute was violated. Mr. Wu does contend that plaintiff's "conduct" violates its obligations of "good faith and fair dealing," but contains no evidence or facts relating thereto.
Mr. and Mrs. Wu also claim that the plaintiff refused to comply with their request for discovery, which they argue would have enabled them to gather sufficient facts to prove their special defenses and counterclaim. However, the file reveals that the plaintiffs filed a motion for protective order in connection with the proposed deposition of Dime Savings Bank of New York, FSB, noticed by the defendants for September 30, 1991. This motion was marked "off" the short or motion calendar of October 7, 1991, evidently pursuant to an agreement of counsel relating to terms and conditions of discovery. The plaintiff contends that this agreement included a provision that the defendants would re-notice the proposed deposition with more specificity, which was not filed until September 3, 1992. Therefore, it appears that Mr. and Mrs. Wu had ample opportunity to conduct discovery to prove their special defenses and counterclaim, and that the plaintiffs have in no way wrongfully impeded any such attempts.
Thus, plaintiff's motion for summary judgment on its complaint and the defendants' counterclaim is granted. The Settineri affidavit of debt indicates a debt of $436,809.81 as of May 31, 1992, plus a per diem of $89.91, resulting in a total debt as of this date of $457,309.29.
An appraisal by James J. Kyle, CREA, CRA, a licensed real estate appraiser, estimates the fair market value of the defendants' premises to be $405,000. Accordingly, it appears that the defendants do not have any equity in the property, hence a judgment of strict foreclosure should and hereby does enter with the first law date of February 8, 1993. An affidavit of attorney's fees in the amount of $2,659.58 is in the file, and this amount is awarded to the plaintiff. Costs are to be taxed by the Clerk.
So Ordered.
Dated at Stamford, Connecticut, this 14 day of January,
William B. Lewis, Judge CT Page 167